FILED IN CLERK'S OFFICE
U.S.D.C - Atlanta

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

APR 0 6 2011

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

VIRENDRA   J.   KHAROD
_____
Plaintiff

vs.

CITY   OF   ATLANTA
_____
Defendant

-CC

**1:11-CV-1104**

## TITLE VII COMPLAINT

1. Plaintiff resides at "ASHIRVAD" 4183 SCYLER WAY
   TUCKER, GEORGIA 30084 + 2185

2. Defendant(s) names (s) City of Atlanta by
   1/ HON'BLE KASIM REED, HON'BLE MAYOR, CITY OF ATLANTA
   2/ HON'BLE CEASAR C. MITCHELL, Hon'ble President, Atlanta City Council.

Location of principal office(s) of the named defendant(s) _____
55 TRINITY STREET, S.W.
ATLANTA, GEORGIA 30335

Nature of defendant(s) business _____
CITY / MUNICIPAL GOVERNMENT

Approximate number of individuals employed by defendant(s) 500+
Exact Number — NOT KNOWN ; Could be around
Count of 6000 - 8000 Employees)

    **\*Note:** This is a form complaint provided by the Court for pro se litigants who wish to file an employment discrimination lawsuit.  It is not intended to be used for other kinds of cases.

3.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination.  Jurisdiction is specifically conferred on the court by 42 U.S.C. § 2000e-5.  Equitable and other relief are also brought under 42 U.S.C. §e-5(g).

1.    The acts complained of this suit concern:

   A.    _____   ~~Failure to employ me.~~
   B.    ✕         Termination of my employment.
   C.    _____   ~~Failure to promote me.~~
   D.    _____   Other (Specifiy) _____
                   _____
                   _____
                   _____

5.    Plaintiff:

   A.    _____   ~~presently employed by the defendant.~~
   B.    ✕         not presently employed by the defendant.  The dates of plaintiff's employment were 10 July 1983 – 24 DECEMBER. 2008. The reasons plaintiff was given for termination of employment is/are:
         (1)   _____   ~~plaintiff was discharged.~~
         (2)   ✕         plaintiff was laid off.
         (3)   _____   ~~plaintiff left the job voluntarily.~~

6.    Defendant(s) conduct is discriminatory with respect to the following:

   A.    ASIAN     my race
   B.    _____   my religion.
   C.    _____   my sex.
   D.    INDIA     my national origin.
   E.    AGE       Other (specify) _____ 71 Yrs – 6 Mo. as on 12/24/2008

         EEOC filed charge no. 846 – 2009 – 23478 based on all of the three counts listed above.

-2-

7.   The name(s), race, sex and the position or title of the individual(s) who allegedly discriminated against me during the period of my employment with the defendant company is/are:

ROBERT HUNTER: White/Anglo-Saxon, Male,
Commissioner
Department of Watershed Management.
D.W.M. ⟶ (D. W. M.)
City of Atlanta.

8.   Describe the discriminatory actions or events you are complaining of in this lawsuit. Give factual detail; including names and dates concerning what happened. You do not need to refer to any statutes or cite law.

① On 10 December 2008, Nine (9) of us were laid off from the Department. ALL Nine of us are US Citizens with foreign Origin — Three from The Caribbeans, two from Nigeria, One from Afghanistan and Three (including myself) are from India.

② ~~Draw~~ Department of Watershed Management laid off a

ASIANS — 11.6279 % (Five out of 43);          ⎫  43, 1148 & 190 are
BLACKS — 7.042 % (85 out of 1148)  and  ⎬  total employees in respective
Whites — 2.6316 % (5 out of 190)            ⎭  Demo. category in DWM.

③ Amongst the "Blacks" there are several Foreign-Born US Citizens, too.

④ My Race, National Origin and Age (71 yrs 6+ mo at the time of layoff) played a big role in the Lay off.

⑤ The EEOC Notice of Rights mentions Civil Rights for Discrimination under:
① Title VII of the Civil Rights Act; ② GINA — The Genetic Information Non-discrimination Act; and ③ ADEA (The Age Discrimination in Employment Act.

For complete details of this case, I am attaching the following Exhibits and Annexures:

① Exhibit "A" —— My Petition to this Hon'ble Court (signed Today)

② Appendix "A" — My Petition to the EEOC includes: Text (4 Pages)

(a) Annexure 1 — Separation letter issued by Robert Hunter.

(b) Annexure 2 — Separation Letter issued by DWM HR Manager

(c) Annexure 3 — formal Separation Notice

(d) & (e) Annexures ④ and ⑤ : Documents compiled by Dr. Naim Meskinyar

(f) Annexure ⑥ — Letter by Commissioner Robert Hunter, Commissioner DWM (issued in around JAN/FEB 2009)

③ Appendix "B" — to my Petition showing previous Instances of Discrimination

9.  The alleged illegal activity took place at DWM ( Department Watershed Management), City of Atlanta.

10.  **A.**  ✓  I have filed a charge with the Equal Employment Opportunity Commission regarding defendant(s).  (I have attached a copy of my charge(s) filed with the Equal Employment Opportunity Commission, which are incorporated into this complaint.

     **B.**  ~~I have not filed a charge.~~

11.  **A.**  ✓  I received a Notice of Right-to-Sue letter from the Equal Employment Opportunity Commission on ~~10 January 2011~~ of 04 January 2011. (date).  (I have attached a copy of the Notice of Right-to-Sue which is incorporated into this complaint.)

     **B.**  ~~I have not received a Notice of Right-to-Sue letter from the Equal Employment Opportunity Commission.~~

12.  State what relief you are seeking from the Court.  If you are seeking a monetary award (back pay or damages), state the amount you are seeking.  If you are seeking injunctive relief (an order by the Court) issued against the defendant(s) summarize what should be in the order.

The Petitioner prays this Hon'ble Court grant following Reliefs:

-4-

(1) All promotions to various Ranks above Civil Engineer-Principal in the same manner as they are granted to Jerry Russell, P.E. (Extantly, she is Deputy Commissioner, Watershed Management Department). The promotion be at least one-week prior to her date of promotion and be associated with Backwages/Pay. Estimated amount: $400,000 ($ four Hundred, Thousands)

(2) Damages for causing Humiliation, and consequent Pain & Suffering by inhuman ~~ordering~~ physically ~~tossing~~ me / out with the Lay of letter. These damages be ordered as "PUNITIVE DAMAGES".

(3) Any and All other compensatory Damages and Reliefs as deemed fit and Ordered by this Hon'ble Court.

06 APRIL 2011                                    Virendra  J. Kharod
_____                                 _____
Date                                            Signature of Plaintiff

Address: _____

"ASHIRVAD", 4183 Scyler Way
Tucker, GA  30084 + 2185

Telephone: (770) 723-9792 (Home)
            (770) 313-8716 (Cell)
E-mail:  Kwikace9396@yahoo.com

Enclosures:

(1) Exhibit "A"   —  The Petition.

(2) Appendix "A"  —  Copy of Application made to EEOC.
                     (was attached to their Questionnaire as Appendix "A")

(3) Annexure 1    to Appendix A   — per above details.
(4) Annexure 2,   to Appendix A   — per Above details.
(5) Annexure 3    to Appendix A   — per above details
(6) Annexures 4   to Appendix A   — per above details
(7) Annexure 5    to Appendix A   — per above details.
(8) Annexure 6    to Appendix A   — per above details.
(9) ~~Appendix~~ "B"  to EEOC Application — Details of Previous cases of Discrimination.

(10) Exhibit "C"  —  EEOC's Notice of Rights.

Exhibit   A

The Petition by
VIRENDRA   J.   KHAROD
The PETITIONER

VIRENDRA   J. KHAROD
"ASHIRVAD" 4183 Scyler Way
Tucker, GA  30084+ 2185
Phone:   (770)  723 - 9797 (Home)
          (770)  313 - 8716  (Cell).
    E-Mail:  Kwikace 9396 @ yahoo. com

06 April  2011

Before   :   The  Judges  of
           The  United  District  Court
           Northern  District  of Georgia
           "Richard Russell" federal Building
           75 Spring street
           Atlanta, GA  30303

IN The Matter of :   DISCRIMINATORY
                     separation  from
                     Service  by City of Atlanta

Petitioner/Plaintiff:   VIRENDRA  J. KHAROD
                        Ex-Employee of City of Atlanta

VERSUS

Defendants/ ]  :  CITY  OF  ATLANTA
Employer  ]       55  Trinity  street, S.W.
                  Atlanta, GA  30335.

Notices to be Served to:
Y Hon'ble  Kasim REED, Hon'ble Mayor
City of Atlanta
55  Trinity  Street, S.W.
Atlanta, GA  30335.

Page  1 of 3

2) Hon'ble CEASAR C. MITCHELL
Hon'ble President of The
Atlanta City Council
55 Trinity street, S.W.
Atlanta, GA 30335.

The Petitioner, Virendra J. Kharod,
most respectfully submits that he,
alongwith his other foreign-born U.S.
Citizen co-workers was terminated
from service and asked to leave
the office premises by City of Atlanta,
(DWM) — Department of watershed
Management's retaining employees
brought in later by City of Atlanta.
I represented to US EEOC
who filed a Discrimination charge No.
846-2009-23478 which is now dismissed
and Notice of Rights is issued.
I pray that the Hon'ble Court
Grant me Reliefs as prayed for
and for which Act of Kindness- this
Petitioner shall always pray, as in
Duty Bound.

Signed this Sixth Day of April, 2011 at
Tucker, GA 30084+2185.

Virendra J. Kharod
-Petitioner.

List of Exhibits & Attachments
on next page (Page 3 of 3)

Page 3 / 3

Petition by VIRENDRA J. KHAROD

List of Exhibits & Annexures:

Exhibit "A" — Petition to the EEOC.

"B" — List of Previous Instances of Discrimination by City of Atlanta.

"C" — EEOC Notice of Rights under

1) Title VII of The Civil Rights Act

2) GINA — The Genetic Information Non-discrimination Act; and,

3) ADEA — The Age Discrimination in Employment Act.

Annexures to Exhibit "A":

1) Annexure 1: letter of DWM Commissioner

2) Annexure 2: letter of DWM HR Director

3) Annexure 3: Formal Separation Notice

4) Annexure 4: Information compiled and Circulated by Dr. Naim Meskinyar, Ph.D., P.E.

5) Annexure 5: Additional Information compiled and Circulated by Naim Meskinyar

6) Annexure 6: Jan/Feb 2009 Letter from Rob(ert) Hunter, DWM Commissioner assuring Employees NO MORE LAYOFFS.

**Appendix A to**
**EEOC Petition by**
**Virenda J. Kharod**

**PETITIONER:**
**Virendra J. Kharod**                          "Ashirvad", 4183 Scyler Way
Phone: (770) 723-9797 (H)                   Tucker, GA  30084-2185
                    E-Mail: kwikace9396@yahoo.com

**Details of <u>Authorized</u> Contact (if unable to contact the Petitioner):**
Anuja V. Kharod (Daughter)
Phone:  (770) 723-9797 (H)
Cell:     (678) 920-2730
E-Mail:  anuja_kharod@hotmail.com

04 June, 2009

Equal Employment Commission
United States of America
Atlanta Local Office
Sam Nunn Atlanta Federal Center
100 Alabama Street SW, Suite 4R30
Atlanta, Georgia  30303
**Attn: Bernice Williams – Kimbrough, Director**
        **And**
        **Robert Dawkins, Regional Attorney**

**IN THE MATTER OF:**        <u>**DISCRIMINATORY SEPARATION FROM SERVICE**</u>

**PETITIONER:**              **VIRENDRA J. KHAROD,**
                             **EX-EMPLOYEE CITY OF ATLANTA**

                             **VERSUS**

**EMPLOYER:**                **CITY OF ATLANTA**
**DIRECT OFFENDER:**         **ROB HUNTER, COMMISSIONER**
                             **DEPARTMENT OF WATERSHED MANAGEMENT**
                             **55 TRINITY AVENUE, SE**
                             **ATLANTA, Georgia 30335**

**MY WORK LOCATION:**        **BUREAU OF ENGINEERING SERVICES**
                             **236 FORSYTH STREET SW, Ste. 500**
                             **ATLANTA, GA 303**03 – 0330

I, Virendra J. Kharod, the Petitioner, am aggrieved by the Discrimination caused by
an act of Arbitrary and Un-Principled Separation from Service **specifically by Mr.**
**Rob Hunter, Commissioner, Department of Watershed Management**
**exercising faith and authority vested in him by the Employer, City of**
**Atlanta.**

1/4

**Per advice of the EEOC representative, this letter follows the original complaint filed by me via telephone to the EEOC toll free line in February/March 2009.**

### Details of the case:

I had to go to New Jersey to attend my elder brother's wife's funeral during the week of 08–12 December, 2008. Upon my return to duty on 15 December, 2008, Ms. Agatha Ozonu, our Bureau's Secretary informed me that our Senior Director, Ms. Sharon P. Matthews, had asked to see me upon my return. She also conveyed that she was expected around 09:00 a.m. and that I could stay at my workstation until then.

Upon her arrival, I saw Ms. Matthews who told me that I should have received Commissioner Rob Hunter's and HR Director William "Bill" Taylor's letters of 10 December 2008, sent to me by FedEx and Certified Mail on the same day. When I told her that, as she was aware, my family and I had gone to New Jersey to attend the funeral of my elder brother's wife and were back in town only the previous evening, i.e. Sunday, 14 December, 2008 and had no knowledge whatsoever about any of the referenced letters. Perhaps they would be delivered to my home during the day and I would have a chance to look at them when I return home in the evening. She told me that I was separated from the City's service and gave me a copy of Commissioner Hunter's letter **(Annexure 1)** as well as a copy of the letter from HR Director **(Annexure 2)**, both dated 10 December, 2008, and asked me to report immediately to Department's HR Director William "Bill" Taylor at City Hall. She also told me that I would be paid my normal wages for the period 11-24 December, 2008 and my separation from service was effective 25 December, 2008.

Upon reporting to Mr. Taylor's office, I was asked to wait as he was extremely busy with HR cases. After a prolonged wait, he came over and told me that I was separated from the City's service due to "Reduction in Budget, reduction in work force" and he called Ms. Favors, his HR subordinate, and asked me to go with her so that she could take care of my separation paperwork. During the time I was waiting, I had read both, Commissioner Hunter's letter and the Separation Notice **(Annexure 3)**, from the copies given to me by Ms. Matthews. I appropriately pointed out to Mr. Taylor that I had Fifteen plus years of Pensionable service with the City thus the City could offer me 'Involuntary Retirement' but could not serve me a Separation Notice. Understanding this, he advised Ms. Favors to take care of the Retirement paperwork accordingly. The process took over two hours as Ms. Favors had to go several times to consult her Supervisor during the process. At the end of it, at my request, she gave me a copy of the paperwork and asked me to go over to Employee Benefits, Pension Division and meet Ms. Walton who would take care of my benefits and dues.

When I went to the Employee Benefits Department and asked for Ms. Walton, the front desk conveyed her message to me that she was extremely busy and that I should call the Pension Division phone line to schedule an appointment to meet her. I insisted upon seeing her and hearing from her, first hand, as I was directed specifically to meet her. Meanwhile, Ms. Walton happened to walk out of the locked door of the Employee Benefits Division and as she was walking past she saw another employee whom she said that she would be back in a moment and see him. As the front desk lady informed her about my insistence about my seeing her per the directive of our HR division, she told me that she had to handle cases of all City

employees, hence she had left instructions at the front desk that the employees be sent back and would meet with them only when she has available time. I asked for the appointment upon which she replied that I should leave my contact number with the front desk and I shall get a call back when my appointment was fixed. She added that as it is the Holidays were incumbent, I should expect a call only after the New Year.

Based on a pattern of Discrimination that I had been subjected to on several occasions during my employment tenure with the City of Atlanta in the past, I knew that my ethnicity was going to work against me and thus I would not get a fair deal in finalizing the Pension entitlement (the details about the previous discriminatory instances are recorded and attached as **Appendix B**).

### Facts that contradict the 'Reduction In Force (RIF), Lack of Funds/Budget Reduction' pretext used by Watershed Commissioner Rob Hunter:

During my subsequent inter-personal contacts, I discovered that Commissioner Rob Hunter had *selectively separated* **9 (Nine) Employees of Non-US Ethnicities, – one from Afghanistan; three from the Caribbean Islands; three including the Petitioner from India; and, two from Nigeria. They are listed below with their Ethnicities in parenthesis:**
1. Dr. Naim Meskinyar, Ph.D., P.E. (Afghanistan);
2. Mr. Lancelot Clark, P.E. (Caribbean);
3. Mr. Sylvester Richards (Caribbean);
4. Ms. – Will provide name later (Caribbean);
5. Dr. Muzaffar Khan, PhD, P.E. (India);
6. Mr. K. Murugesan, P.E. (India)
7. Mr. Virendra J. Kharod – the Petitioner (India);
8. Mr. Peter Ayeni (Nigeria); and
9. Mr. Paully Onyirimba (Nigeria)

All of the above mentioned people are US Citizens.

During my enquiries, I gathered that Dr. Naim Meskinyar had already submitted a representation to EEOC and had also compiled some vital information. At my request, he sent the same as e-mails. The two attachments to his e-mails he sent to me are annexed hereto as **Annexure 4 and Annexure 5.**

Both these annexures go to prove that:
a)  'Reduction in Force' used as pretext to separate the referenced Nine employees from the service is Arbitrary, Discriminatory and Unprincipled violating the canons of Equity, Fairness and Natural Justice as guaranteed by the US Constitution.

If **'Reduction in Force'** was the real objective the City and/or the Watershed Management Department, an employees hired much later I ought to have been separated before those hired earlier. To give a concrete example, Ms. Jerri Russell, P.E. hired as a Civil Engineer Principal in 2000 ought to have been separated before I and any other employee hired before her.

Likewise, if **'Reduction in Budget'** was the real reason for which nine of us were separated from service, then those employees promoted during 2008 with much higher salary grade could have been brought back to their original positions. In fact, our Bureau had only one Director since its inception in 2002 until around May

2008.  Yet, one more newly promoted Director and one more Senior Director were added and posted to the same Bureau.  Again, perusal and study of the **Annexures 4** and **5** (prepared by Dr. Naim Meskinyar) will show the falsehood of using this pretext.

I, once again want to emphasize that Commissioner Rob Hunter's actions guised behind the pretext, **'Reduction In Force (RIF), Lack of Funds/Budget Reduction'** is not only an act of discrimination but also violates the principles of Equity, Fairness, and Natural Justice.  In fact, it also defeats the pronounced clean administration by the incumbent Mayor Honorable Shirley Franklin and the incumbent City Council.  It has been deliberately manipulated to undermine the Equal Employment Opportunities guaranteed by the Constitution of the United States of America.

I, therefore, pray that your August body acts to set aside this disgraceful Act of Discrimination on part of the City of Atlanta and Mr. Rob Hunter, Commissioner of Watershed Management.  I also pray that the City be asked to compensate me for the pain and suffering caused to me and my family by the discriminatory actions of Mr. Rob Hunter and the City of Atlanta.

Any other pertinent facts that discovered either from a records review or through any other credible source will be promptly forwarded to the EEOC for their consideration. Thank you for your time and attention to this grave matter.


Sincerely,



Virendra J. Kharod
The Petitioner

4/4     (Final)

During the employment tenure with City of Atlanta, the Petitioner, Virendra J. Kharod, has been subjected to Discrimination on numerous occasions.

In the current case, in addition to unfair termination, discriminatory practices were employed in paying the Petitioner his Pension dues by the City of Atlanta's Employee Benefits Department. The Petitioner was separated from the service on 25 December, 2008, whereas his Pension was not calculated and paid until the end of February.

In fact, as previously illustrated in Appendix A, the first call back (from the Dec 15, 2008 meeting) by the Benefits Department Representative was on 9th of February, 2009, for an appointment to discuss the pension matters. The date for this appointment was set for February 11th, 2009 (55 days after that initial visit where a prompt appointment after the holiday season was promised). During the February 11, 2009 meeting, the Benefits Department representative gave me the paperwork towards fixation of my service Pension and stated that the Pension for the period of 25 December, 2008 to 28 February, 2009 would be sent to me as the first Pension check. I suggested that, as bulk of February was still past the meeting date, i.e. 11 February, and because the Pension entitlement was already finalized by the City, it would be only proper that the first Pension check be immediately issued, covering period until end of January 2009. The representative responded that they were extremely busy and I should consider myself "fortunate" to get the first Pension check by 28 February, 2009.  I received my first Pension check by end of February 2009.

Past instances of discrimination are as under:
1. In April 1993 the Petitioner was reclassified as working in the position of 'Field Engineer Principal', but until his tenure in October 1993, he was paid only as 'Field Engineer', thereby causing him a loss of around $5,800 in salary alone.  Numerous written and verbal representations made to erstwhile Commissioner of Administration, Herb McCall and his successors did not yield any results.
2. On 23 October, 1993, the Petitioner was laid off on the grounds that funds for the project on which he was employed were exhausted; whereas two other employees employed just prior to 23 October 1993 were retained in the service.  When this case was represented to Mr. Melvin Waldrop, Deputy Chief Operating Officer of City of Atlanta, he redirected the Petitioner to Mr. Alfred Elder, Affirmative Action Officer of the City.  After due investigations and under the prevailing facts, the Affirmative Action Office directed the City to re-employ the Petitioner and he was re-employed on 07 December, 1995.
3. The Petitioner was employed as Civil Engineer Principal on 07 December, 1995; and until his separation on 25 December, 2008 he did not receive any promotions.  On the other hand, several people employed after him and holding positions as Civil Engineer Principal contemporarily have been promoted by internal departmental actions. Ms. Jerri Russell, hired in 2000 has been promoted as Watershed Manager, and then bypassing the position

1/2

of Watershed Manager Senior was again promoted, around May 2008, as Director.

4. On several occasions, certain preferred employees have been rewarded in cash as Fountain Awards; whereas the Petitioner who ought to have earned this Award in 2000 because he had performed Outstanding Customer Services for two quarters in 1999 – 2000 never received such an award. The Petitioner has not received appropriate due compensation entitled by Georgia Workmen's Compensation Act for his injury on job caused on 04 May, 1999 and subsequent partial disability caused due to negligence in treatment thereof. A complaint was filed by the petitioner at the point. However, due to a change in administration and other service personnel, appropriate action on the complaint is pending.

The Petitioner will positively bring to the notice of your August body any other incidents that he can discover from his records.

Sincerely,

Virendra J. Kharod
The Petitioner
04 June, 2009

2/2     (FINAL)

*Exhibit C to the Petition
(two Pages)*

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:   **Virendra Kharod**
      **4183 Scyler Way**
      **Tucker, GA 30084**

From:   **Atlanta District Office**
        **100 Alabama Street, S.W.**
        **Suite 4R30**
        **Atlanta, GA 30303**

☐   *On behalf of person(s) aggrieved whose identity is
    CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2009-23478 | **Laurence Knight,**<br>**Investigator** | **(404) 562-6845** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Bernice Williams-Kimbrough,*
**Bernice Williams-Kimbrough,**
**District Director**

MAR 04 2011

Enclosures(s)

*(Date Mailed)*

cc:   **Alfred Elder**
      **Diversity Manager**
      **CITY OF ATLANTA**
      **68 Mitchell Street, SW**
      **Suite 2150**
      **Atlanta, GA 30303**

*P. 1 of 2*

Enclosure with EEOC
Form 161 (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

P. 2 of 2 (Final)

*Annexure 2 to*
*Appendix "A"*



SHIRLEY FRANKLIN
MAYOR

# CITYOFATLANTA

55 TRINITY AVENUE S.W., SUITE 5400,
ATLANTA, GEORGIA 30335-0310
OFFICE 404-330-6081
FAX 404-658-7194

ROBERT J. HUNTER
COMMISSIONER
DEPARTMENT OF
WATERSHED MANAGEMENT

December 10, 2008

Today, we met with employees that were affected by the fiscal 2009 budget gap.  Since you were unable to attend the employee informational meeting today, I have enclosed the following documents to assist you during your transition:

- Commissioner's letter to employee
- HR Employee Maintenance Turnaround Document (TAD)
- City of Atlanta Employee Separation and Clearance Form
- State of Georgia Department of Labor Separation Notice
- City of Atlanta Employee RIF Checklist

Please follow the guidelines below in completing and returning your paperwork:

- HR Employee Maintenance Turnaround Document (**TAD**) – Sign and date in the space provided for Employee Signature/Date
- City of Atlanta Employee Separation and Clearance Form – Check the appropriate boxes for Payout Options for Annual Leave and Compensatory time; Sign and Date the second page
- State of Georgia Department of Labor Separation Notice – No action necessary (Retain this original for your records)
- City of Atlanta Employee RIF Checklist – No action necessary (This form indentifies your leaves balances for vacation and compensatory time)

Return the package of information under signature required mailing or hand deliver by December 15, 2008 to the following address:

City of Atlanta
Department of Watershed Management
55 Trinity Avenue – Suite 5700
Atlanta, Georgia 30303-3544

If your information is not received by the designated date, we will process your TAD with a termination date of December 24, 2008.

Thank you for your immediate attention to this matter.

Sincerely,

*William Taylor*

William Taylor
Director of Human Resources

404   865   8588  (Direct)

Appendix "A"

# City of Atlanta

Employee Separation and Clearance Form

Submit completed form to Department of Human Resources for proper clearance. This form should be attached to the HR TAD. Failure to complete this form or to return all City properties may cause a delay in the receipt of final paycheck or cause pension benefits to be withheld.

## Employee Separation Information

Name: **Virendra Kharod**                    Employee ID No. **528**

Department: **Watershed Management**

Type of Separation: ☐ Resigned   ☐ Retiring   ☑ Termination   ☐ Discharged   ☐ Dismissal

Reason for Resignation or Termination:
**Reduction in Force (RIF) Lack of Funds | Budget Reduction.**

Date of Separation:

Supervisor Name:

## Payout Options

Annual Leave Disbursement Options:
☐ Lump Sum Payout    ☐ Leave remain payroll until exhausted    ☐ No Annual Leave Due

Compensatory Time Disbursement Options:
☐ Lump Sum Payout    ☐ Comp time remain on payroll until exhausted    ☐ No Compensatory Time Due

## Departmental Checklist

☐ Attach documentation to support resignation, retirement or termination to the HR TAD.
☐ Exit Questionnaire attached. If not, submit explanation detailing the status of exit questionnaire.
☐ Collect electronic equipments (PDA, cell phone, laptop or notebook pc, cameras, video or audio equipment).
☐ Retrieve all electronic keycards, ID badges, parking cards, or other cards allowing access to City properties.
☐ Collect master keys and communication devices.
☐ Revoke employee access and control of computers, including network logon, access to mainframe systems, Internet, Intranet and access to other databases and/or applications.
☐ Cancel employee access to financial or administrative MIS (Peoplesoft, Kronos, MARS-G, GCIS).
☐ Request Finance to review employee travel advances reimbursements, advance sick leave account, or other expensed items due to the City.
☐ Prepare Georgia Department of Labor Separation Notice Form DOL-800. Give original to the separated employee, mail the 2nd copy to UC eXpress, P. O. Box 283, St. Louis, MO., 63166, and file the 3rd copy in the employee's record.

Annexure A to
Appendix A.

Data compiled by : Dr. Naim Meskinyar
Ph.D., P.E.

1. *Ben Jacob, Watershed Manager, He was hired two years ago as Civil Engineer Principal grade 27 (10th step the highest step) and within a year he was promoted to Watershed Manager with a salary of around $82,000 per year at the time that the Upper Management was aware of the budget short fall.*

   **Note:** *Mr. Jacob's core degree is in Biology which has no relation to Civil Engineering or Construction.*

2. *Jerri Russell, Watershed Director. She was hired as Civil Engineer Principal Grade 27 in year 2000 with a salary of $65,000/year. She was promoted in 2006 to watershed manager grade 30 with a salary of $82,000. Even though her pay grade was lower than mine, her salary was almost $10,000 higher than my salary. Instead of promoting her to Manager Senior (Grade 32), the management skipped this step and promoted her to the position of director (grade 35) with a salary of $88,000 at the time of Budget crisis over my section.*

**_Please see attachment #1 for the additional names of the American Caucasians who have been treated differently._**

This Annexure was sent by Naim Meskinyar to all co-workers laid off with him on 12/24/2008.

Annexure 5 to

Appendix "A"

# ATTACHMENT #1

*The two employees I have named in my complaint and the following six employees are under the Deputy Commissioner Barnes's supervision and all of them are American Caucasians who are occupying the Director and Director Senior positions with salaries that range from $88,000 to $110,000 per year.*

**How is it possible that while considering their higher salaries and their shorter seniorities than most of the minorities whom were laid off, none of these Caucasian employees positions were affected by the Budget Short Fall crisis?**

1.  *Dan Waling, Watershed Director: He has been retired from the City Government since 1999. He was later brought back by the Management at first as a consultant and started drawing his salary from a vacant Civil Engineer Principal position. Since then his position has been upgraded gradually from the equivalent of Civil Engineer Principal to Watershed Director.*
    *Mr. Walling has been drawing two salaries from the city since he retired. He gets $62,000 per year for his retirement plan and $97,000 per year for working as a consultant from a Watershed Director's position. Why the Management did not keep one of the minorities with way lower pay grade instead of paying him $97,000 per year if their real decision was due to budget short fall?*

2.  *Mr. Lee Hunt, Watershed Director: In April 2003 Mr. Lee Hunt was promoted to a Watershed Director's position without any job announcement by the Department of Human Resources (DHR) and without any interview process from the candidates list which is a common practice by the City of Atlanta. In addition, Director Lee Hunt supervised only two employees for more than six years with a salary of $92,000 per year.*

3.  *Mr. Robert Bush, whose name was also on the positions to be upgraded, has been moved from a Civil Engineer Chief (salary grade 29) to a Watershed Director position (salary grade 35) without any open interviews.  Indeed the six grade shift in pay grade is atypical practice of favoritism. Most upgrades and promotions are limited to a maximum of only three salary pay grades.*

4.  *Mr. Roger Smith in December of 2004 was promoted from Watershed Manager (grade 30) with a salary pay of $68,400 to Director's position (grade 35) with a salary pay of $85,000. In January of 2008 he again was promoted to Director Senior (grade 41) with the salary pay of $98,000 per year. Within a period of five (5) years his salary has been increased by $29,600 per year. These types of salary increases have never happened to any minorities in the past.*

5.  *Mr. Jeff Acton is also one of the American Caucasians who was hired and promoted within 5 years to a Director's position, there is no information of his income or history of his promotion/qualifications available at this point. It is worth noting that until the recent few years he was working as a full time consultant who was really a*

*JJ&G employee while supervising other City employees who would sign off on his invoices.*

6. *Mr. Mike Halloworth is also one of the American Caucasians who was hired and promoted within 5 years to a Director's position; there is no information of his income or history of his promotion/qualifications available at this point.*

*I am asking the respectful EEOC officials to interview the following twelve (12) foreign born employees within the Department of Watershed Management and perform a comparison analysis between the background (experience), tenor with COA, education, and salary between the above mentioned eight (8) American Caucasians in order to see clearly the pattern of the discrimination practices within the Department of Watershed:*

<u>Note: LO for Laid Off</u>

1. *Naim Meskinyar, Ph.D., P.E.*   (Afghan-American) <u>LO</u> 24 years with COA, <u>$73,810.10</u>
2. *Ade Abon, M.S., P.E.*          (Nigerian-American)
3. *Lance Clark, MS, P.E.*         (Trinidad-American) <u>LO</u>
4. *Patrick Walker, MBA, P.E.*     (Virgin Island-American)
5. *Muzaffer Khan, Ph.D., P.E.*    (Indian-American) <u>LO</u>
6. *Mohammad Hayek, C.E.*          (Syrian-American)
7. *Peter Ayeni, C.E.*            (Nigerian-American) <u>LO</u>
8. *Samir Haidari, C.E.*          (Iranian-American)
9. *Sylvester Richards, C.E.*      (Jamaican-American) <u>LO</u>
10. *Naser Rahim, P.E.*           (Afghan-American)
11. *Paully K. Onyirimba, P.E.*    (Nigerian-American) <u>LO</u>
12. *Virendra Kharod, C.E.*        (Indian-American) <u>LO</u>

*My request from the EEOC Officials is to review and probe my case thoroughly for justice to be served as the US Constitution has promised to all ethnic groups and all minorities.*

*God Bless America*

*Best Regards,*

---

*Dr. Naim Meskinyar, P.E.*

This Annexure was sant (by E-mail) by Naim Meskinyar to all co-workers laid off with him on 12/$\frac{10}{24}$/2008.

Virendra J. Kharod





SHIRLEY FRANKLIN
MAYOR

# CITY OF ATLANTA

55 TRINITY AVENUE S.W., SUITE 5400
ATLANTA, GEORGIA 30335-0310
OFFICE 404-330-6081
FAX 404-658-7194

DEPARTMENT OF
WATERSHED MANAGEMENT
ROBERT J. HUNTER
COMMISSIONER

Happy Payday!

I know there is a lot of stress out there related to the economy and the financial condition of the City of Atlanta. So, I wanted to share some good news with you that should help reduce the level of concern. We have been watching Watershed's financial condition very closely the last few months, and I am very happy to report that our financial condition has improved significantly for this fiscal year. There will absolutely NOT be any additional layoffs, and there will be no furloughs in Watershed. In fact, we may be able to bring a few people back and start some of the projects we have put on hold.

I will cover the details during department employee meetings at our facilities over the next month. However, the bottom line is that in November 2008 we were projecting a $50 million end-of-year budget shortfall. We all took actions that will close that $50 million gap by the end of June. The additional financial data for the seven-month period ending January 31 shows that revenues have been greater than expected and the potential gap of $50 million is more likely to be only $30.5 million. Since we already have the cost containment measures in place to save $50 million, we may have a budget surplus of $19.5 million ($50 m - $30.5 m = $19.5 m).

So I want you to stop worrying about layoffs and furloughs.

I also don't want you to worry about all the media buzz of the last few weeks. The facts are that we provide an essential service to our customers, and you all do a very good job of it. That doesn't mean that we can't improve, because we can and we must, but we are a very solid organization.

Instead of worrying, I'd like every one to focus on our operations and redirect that energy into solving problems and providing service to our customers.

Thanks for all you do. I enjoy working with all of you every day.

Rob Hunter
Commissioner